# FOURTH DISTRICT, 1897.

MOLLIE P. HALBERT ET AL. v. MRS. J. DeBODE ET AL.

Delivered March 3, 1897.

**1. Administrator—Proof of Appointment, etc—Presumption.**

Where the court in which an administration was pending recognized a certain person as administrator of the estate for a period of about 18 years, and all parties interested in the estate, including appellants, unequivocally so treated him, it will be conclusively presumed that he was the legal administrator in any collateral attack upon his acts as such.

**2. Same—Land Certificate—Contract for Location—Locative Interest.**

Where an administrator contracted with a third party to locate a land certificate belonging to the estate, in consideration of a portion of the land, and such contract was approved by the court, and after the location the administrator, by order of court, made to the locator a deed in severalty of his interest, which was approved by the court, and in a partition of the estate thereafter made in which all the heirs were duly represented, the partition was made in recognition of such deed to the locator,—whatever interest the heirs had in such locative part of the land passed to the locator by virtue of such proceeding.

**3. Same—Community Administration—Estoppel of Heirs.**

Where in the course of a community administration the administrator contracted for the location of a land certificate belonging to the estate, and in pursuance of orders of the court conveyed to the locator his part of the land under such contract, and such proceedings were approved by the court and recognized in the partition of the estate between the heirs, such heirs cannot be heard to assert an interest in such locative part because the certificate was community property in which their deceased mother had a one-half interest.

**4. Charge of Court—Construction as an Entirety.**

The several paragraphs of the court's charge will be construed in connection with each other, and where, when the charge is thus construed, an error in a given paragraph becomes not misleading, it will not be ground for reversal.

**5. Same—Acquiescence—Weight of Evidence.**

Acquiescence is a question of fact to be determined by the jury from all the facts and circumstances in each case, and it is not the province of the court to tell the jury what facts or combination of facts will constitute such acquiescence in the claim of another to one's property as will prevent the owner from recovering it.

**6. Bona Fide Purchaser—Consideration.**

The relinquishment by heirs of their interest in the property and lands of an estate is a sufficient consideration to constitute them bona fide purchasers of land.

**7. Same—Burden of Proof.**

Where the subsequent purchaser gets the legal title, and another party holding an equitable title seeks to oust him, the burden of proof rests on the holder of such

equity to show that the subsequent purchaser had notice, actual or constructive, of his equitable title, or of such facts as would put a prudent man on inquiry.

**8. Acquiescence and Ratification—Knowledge of Facts Requisite.**

To constitute an acquiescence or ratification, the act or acts relied upon must have been done with full knowledge of all the facts, and with the intention to adopt and be bound by what is claimed to have been acquiesced in or ratified.

**9. Evidence—Recitals in Deed Not Binding on Strangers.**

Recitals in a deed and in the decree of the probate court authorizing the deed, are not binding upon third persons, not parties to the deed, and as to them are hearsay.

APPEAL from Hill.   Tried below before Hon. J. M. HALL.

*Thos. B. Greenwood & Son, Dave Derden, J. S. Bounds* and *G. W. Hardy,* for appellants.—1. If the plaintiffs purchased the land conveyed to them and paid for it in compromise or settlement of a claim which they previously had against Jesse Calhoun, then they would be innocent purchasers. Smith v. Westall, 76 Texas, 509; McKamey v. Thorp, 61 Texas, 653; Lewis v. Cole, 60 Texas, 341; Peterson v. McCanley, 25 S. W. Rep., 826; Johnson v. Newman, 43 Texas, 628.

2. Ratification is not obligatory upon a party unless the act relied upon to show ratification is done with full knowledge of the facts and circumstances of the case, and with intent to adopt the act or thing sought to be shown to have been ratified, and it was the plain duty of the court to so charge. City of Laredo v. MacDonnell, 52 Texas, 528; Smith v. Estill, 28 S. W. Rep., 805.

3. The court erred in refusing plaintiff's special charge No. 4, because statements and recitals contained in petitions, judgments, or deeds are not evidence to establish facts stated and recited as against strangers thereto. Greenl., Evidence, secs. 23, 82, 98, 99, 169, 171, 522, 523, 524, 527a, 535, 536; McCamant v. Roberts, 66 Texas, 260; Foster v. Powers, 64 Texas, 249; Insurance Co. v. Tinsdale, 91 U. S., 238.

4. The court erred in admitting the copies of the petition, judgments and proceedings in partition as evidence that appellants or any of them were estopped or conclusively precluded from questioning the Ratcliff-Alford locative contract and partition. Medlin v. Wilkins, 60 Texas, 414; Griffith v. Rife, 72 Texas, 185, 193, 194; Halbert v. Carroll, 25 S. W. Rep., 1102; Browning v. Atkisson, 37 Texas, 643, 652, 660; Box v. Word, 65 Texas, 160; Scoby v. Sweatt, 28 Texas, 730; Grigsby v. Caruth, 57 Texas, 269; Greenl., Evidence, sec. 524; Black on Judgments, secs. 534, 548.

5. It affirmatively appears from the papers, records and minutes of the Probate Court of Anderson County that the appointment of Alford as administrator of the estate of John E. Cravens was vacated and annulled by an appeal therefrom, and that thereafter the said Alford was appointed and qualified as administrator pro tem, with limited powers, and that as administrator pro tem he had no power to make any locative contract binding on the estate of his intestate. Hartley's Dig., art.

1232, 718; Houston v. Mayes, 77 Texas, 265; Bender v. Lockett, 64 Texas, 566; Moore v. Jordon, 65 Texas, 395; Hartley's Dig., arts. 1127, 1130, 1131; Dull v. Drake, 68 Texas, 207; Pryor v. Downey, 50 Cal., 388; Rose v. Newman, 26 Texas, 131.

6. The court erred in refusing plaintiffs' special charge No. 12, because the pretended locative contract between Alford and Ratcliff was not binding on the estate of John E. Cravens, and because W. G. W. Jowers being debtor and creditor to said estate as well as the administrator's surety, was disqualified to sit in the administration of said estate, and because the administrator's deed to Ratcliff was unauthorized and wholly void. Stone v. Ellis, 69 Texas, 325; Fine v. Freeman, 83 Texas, 529-536; Teal v. Terrell, 48 Texas, 502, 503, 509; Sypert v. McGowan, 28 Texas, 640; Glassgow v. McKinnon, 79 Texas, 116, 118; Stafford v. Harris, 82 Texas, 184; Ball v. Collins, 5 S. W. Rep., 622.

*Tarlton & Morrow* and *McKinnon & Carlton,* for appellees.—1. The instruction complained of should be construed in connection with the rest of the charge of the court, and when so construed it is apparent that it refers to the plaintiffs, Halbert and wife only, and that the jury could not have construed it to affect the interest of Lane and Threadgill. Pridham v. Weddington, 74 Texas, 354; Railway v. Matula, 79 Texas, 577; Harris v. Dougherty, 74 Texas, 1; Moore v. Moon, 73 Texas, 382; Freiburg v. Johnson, 71 Texas, 558.

2. The matters of evidence to which the court called attention in the paragraph of the charge (of which the language complained of is only a part), were sufficient as a matter of law, to establish title of appellees against the appellants, Halbert and wife. Halbert v. Carroll, 25 S. W. Rep., 1102; Halbert v. DeBode, 28 S. W. Rep., 61; Wren v. Harris, 78 Texas, 349; Murrell v. Wright, 78 Texas, 519; Hudson v. Junnegan, 78 Texas, 349; Durst v. Dougherty, 81 Texas, 750; Alexander v. Womack, 18 Texas, 197.

3. The charge complained of in the seventh assignment of error contains a correct legal proposition, and is applicable to the facts in this case. Ayres v. Duprey, 27 Texas, 606; Bailey v. Tidwell, 59 Texas, 542; Overstreet v. Manning, 67 Texas, 661.

4. The locative contract and partition with Ratcliff were fully ratified and acquiesced in by all parties interested in the estate of Jno. E. Cravens. Halbert v. Carroll, 25 S. W. Rep., 1104.

5. The County Court of Anderson County having recognized Alford as administrator of the Cravens estate for many years, and all parties interested in the estate including appellants, having unequivocally so treated him it must be conclusively presumed that he was the legal administrator in all actions where his acts as such are collaterally attacked. Halbert v. Martin, 30 S. W. Rep., 388; Halbert v. DeBode, 28 S. W. Rep., 61; Halbert v. Carroll, 25 S. W. Rep., 1104, and cases cited.

6. The locative contract and conveyance to Ratcliff under the orders of the Probate Court divested the community estate of John E. Cravens

and wife of all interest in the land in controversy, and appellants by their conduct are estopped to claim the contrary. Halbert v. Carroll, 25 S. W. Rep., 1103; Alexander v. Maverick, 18 Texas, 197.

NEILL, ASSOCIATE JUSTICE.—We adopt appellants' statement of the nature and result of the suit, which is as follows:

"This suit was a consolidation for trial of four originally distinct actions of trespass to try title to four several tracts of land, embracing altogether 1426 acres, in the District Court of Hill County, in which appellants (Mollie P. Halbert, S. A. Lane, and T. F. Threadgill, all married women, joined by their husbands) were plaintiffs and appellees. (whose names it is not necessary to mention) the defendants.

"The petitions of plaintiffs were in the usual statutory form, while the answers of defendants consisted of pleas of not guily, of three and five years' limitations, of improvements in good faith, and cross bills. The plaintiffs by supplemental petitions set up coverture, in avoidance of defendants' pleas of limitations.

"The suit as consolidated was tried before a jury, resulting on October 24, 1895, in a verdict and judgment for all the defendants who filed answers, and from this judgment plaintiffs have duly perfected and prosecuted this appeal."

Two of the cases included in this consolidation were before on appeal to the Court of Civil Appeals of the Fifth Supreme Judicial District. Halbert v. Carroll, 25 S. W. Rep., 1102, and Halbert v. De Bode, 28 S. W. Rep., 58.

*Conclusions of Fact.*—The tracts of land involved in this suit were located and patented under the Robert S. Patton league certificate. The certificate was acquired by John E. Cravens and John G. Gooch by purchase under a regular chain of transfers from Patton, on July 13, 1857, and the patents were issued of various dates from April, 1873, to June, 1877,—the surveys having been made in 1869,—to John E. Cravens and John G. Gooch as assignees. The undivided interest in the certificate by virtue of which the lands were located, conveyed to John E. Cravens, was the community property of him and his wife, Mary B.

John E. Cravens died intestate in 1860, leaving his wife and his children, Mollie P. Cravens and Earle E. Cravens, the only heirs to his estate. Mary B. Cravens died in 1862, devising her entire estate to Mollie P. and Earle E. Cravens. Mollie P. married B. F. Fortson on the 3rd of July, 1873, and remained his wife until the 24th of January, 1883, when he died, and on the 14th of December, 1884, she married H. A. Halbert, who is joined with her as a plaintiff in this suit. Earle E. Cravens died intestate, during her minority in 1880, and left her sister Mollie P. her only heir.

John G. Gooch died in 1866, and left a will, which was duly probated, appointing Gideon J. Gooch his independent executor. On April 1, 1874, Gideon J., as such executor, conveyed to Jesse Calhoun his

testator's interest in the land located by virtue of the Patton certificate, and in July, 1877, Jesse Calhoun made a deed conveying his interest in said land to the appellants S. A. Lane and T. F. Treadgill.

On the 25th day of February, 1862, George F. Alford was, by the Probate Court of Anderson County, appointed administrator de bonis non of the estate of John E. Cravens, deceased, and on the second day thereafter gave bond and qualified as such administrator, and entered upon and continued to perform his duties as administrator of said estate until in July, 1879, when the estate was partitioned and the administration closed.

The land was located by J. T. Ratcliff at different times between the 27th of October, 1867, and July, 1879. These locations were made by virtue of a written contract, dated October 24, 1867, made between Ratcliff and George F. Alford, administrator of the estate of John E. Cravens, deceased. This contract recited that Alford acted for the estate of John G. Gooch, under authority from Gideon J. Gooch, executor. By the terms of the contract, Ratcliff undertook to locate the R. S. Patton certificate on the best vacant lands he could find in Hill and McLennan Counties, and to pay all expenses of locating and obtaining patents, and was to receive for his services one-third of the land. This contract was by the administrator reported to and approved by the County Court of Anderson County on December 1, 1876, and on thd 6th day of August, 1878, the administrator, in pursuance of an order of said court, made when the contract was approved, executed a deed to Ratcliff conveying him the lands in controversy.

After this deed was made, the subsequent proceedings in the administration of the estate show that said lands were no longer regarded as assets of Cravens' estate, but they were regarded and recognized as the property of Ratcliff. After this deed was made and reported to the court by the administrator, and his action approved, the appellant Mollie P. Halbert contested the report of the administrator for a final settlement of the estate, and, on a compromise made between them and the administrator, it was agreed that all contests were withdrawn, and that all objections to annul reports of sales and contests relating thereto should be dismissed at the cost of the estate, and that the administrator should be discharged. This agreement was carried out.

The estate of John E. Cravens was finally settled and partitioned among the heirs by said court at its July term, 1879, said Mollie P. being a party, and Earl E. Cravens, the only other heir, being also a party, and represented by her special guardian, Gideon J. Gooch. In this partition the orders of the court and the deed executed by the administrator to J. T. Ratcliff are referred to and acquiesced in by the parties.

In the report of the commissions, which is embodied in the court's decree, describing the land set apart to Mollie P. (then Mollie P. Fortson), is the following description: "1078 acres in Hill County, part of 3,170 patented to Cravens and Gooch, assignees of Robert S. Patton,

* * *  1015 acres out of said 3170 acres [the number of acres located
by virtue of the Patton certificate] having been set apart to J. T. Ratcliff
for his locative interest on November 30, 1876 (see Book J, page 281,
Minutes County Court, Anderson County), leaving a balance of 2155
acres undivided between said Mollie P. Fortson and the estate of John
G. Gooch,—$2695." "182 acres in Hill County, part of 364 acres
located by said J. T. Ratcliff for Cravens & Gooch under R. S. Patton
certificate, and when patented is to be equally divided between said
Mollie P. Fortson and the estate of John G. Gooch—$455." The de-
cree sets aside to Earl E. Cravens "216 acres located by J. T. Ratcliff
for Cravens and Gooch, under the R. S. Patton certificate, and when
patented is to be equally divided between the estate of John G. Gooch,
deceased—$450."

On August 8, 1877, the appellants S. A. Lane and T. F. Threadgill,
joined by their husbands, conveyed to Thomas B. Greenwood and John
Young Gooch one-half of their interest in the R. S. Patton land in Hill
County, Texas.

On April 7, 1880, the appellants Lane and Threadgill, joined by their
husbands, as plaintiffs, filed their suit in the District Court of Ander-
son County to partition the R. S. Patton lands in Hill County, making
Thomas B. Greenwood and John Young Gooch and Mollie P. Fortson
(now Mollie P. Halbert) defendants. In their petition they do not in-
clude as subject to partition that part of the land which had been set
aside to Ratcliff, but describe the lands belonging to them and defend-
ants by field notes and a plat which refer to the lands set apart to Rat-
cliff as his lands. All the lands except those which had been deeded to
Ratcliff are partitioned among the plaintiffs and defendants in the suit,
and in the decree of partition the land is described by field notes refer-
ring to the lands which had before been set aside to Ratcliff.

The appellants Lane and Threadgill testified that they knew nothing
of the locative contract with Ratcliff when they bought the lands from
Jesse Calhoun. W. C. Lane, who acted for them in making the pur-
chase, also testified that he knew nothing of such contract, or of Cra-
ven's administrators' deed to Ratcliff; that he never knew Ratcliff
claimed any part of the Patton land until about two years subsequent
to the conveyance to Mrs. Lane and Mrs. Threadgill; and that neither
his wife nor Mrs. Threadgill had any knowledge of the Ratcliff locative
claim, or of the facts upon which it was based, until just before this
suit was brought. He also testified that Mrs. Lane and Threadgill
were the heirs to an half interest in the estate of Joe T. Calhoun,
and that Jesse Calhoun was heir to the other half; that Jesse was the
administrator of the estate, and as such had collected and used large
sums of money belonging thereto; that he acted as the agent of his wife
and of Mrs. Threadgill in the partition and settlement of the estate of
Joe T. Calhoun, and in procuring the conveyance to the Patton lands
from Jesse Calhoun; that the real consideration for the conveyance and
partition of the Patton lands to his wife and Mrs. Threadgill was their

interest in about 9000 acres of land, and about $2900 in notes and accounts, and $2247 in money. He was asked on cross-examination by the defendants if the deed and partition of the Patton lands were not the result of a compromise with Jesse Calhoun of a claim which they had against him on account of his administration of the estate of Joe T. Calhoun, to which he replied that said deed and partition were the result of such compromise releasing all claim against Jesse Calhoun and his bondsmen as administrator.

Each of the appellees claim by warranty deeds through a regular chain of transfer from J. T. Ratcliff to himself.

In considering the assignments of error it may be necessary to state more in detail the evidence upon which our conclusions are found.

*Conclusions of Law.*—As we have concluded to affirm the judgment of the court below against Mollie P. Halbert and husband, and reverse it in part as to the other appellees, we will, so far as practicable, consider first the assignments of error which relate to that portion of the judgment which we shall affirm.

It was agreed by the parties, subject, however, to each and every objection that could be urged to certified copies, that the probate records of Anderson County, Texas, show: (1) That on January 17, 1862, J. R. C. and Matilda M. Terry filed an application for letters of administration on the estate of John E. Cravens, deceased, and that on January 25, 1862, George F. Alford filed a contest to said application, and an application for letters of administration on the estate to himself; (2) that on February 25, 1862, a decree was rendered by said court denying the application of the Terrys, and appointing Alford administrator de bonis non of said estate, and that from this decree J. R. C. and Matilda Terry appealed to the District Court of Anderson County, and filed, as required by law, their appeal bond; (3) that on the 29th day of December, 1862, George F. Alford filed his application for temporary letters of administration on said estate, in which application there is a recitation of the order appointing him temporary administrator, and of the fact that an appeal from said order, taken by Terry and wife, was then pending in the District Court of Anderson County; (4) that at the December term, 1862, of the County Court of Anderson County temporary letters were granted Mr. Alford on said application, to continue in force until said appeal should be decided in the District Court; (5) that George F. Alford, after such appointment, gave bond, with T. J. Word and W. G. W. Jowers as sureties, and qualified as temporary administrator of said estate; (6) that the probate records of Anderson County do not show that George F. Alford returned any appraisement in the administration of the estate of John E. Cravens, nor do they show that he was ever appointed administrator of said estate subsequent to his appointment as administrator pro tem, nor do they contain any evidence if ever Alford ceased to be temporary administrator, or at what time he began to act as administrator de bonis

non; (7) that said records and minutes show that Alford acted as administrator pro tem, but contain no evidence that he ever made a statement of his acts as such administrator during the time he acted as such, nor evidence showing that he ever turned over the estate to an administrator with full powers; (8) that said records show a claim against the estate of John E. Cravens in favor of Delispine & Jowers, for $177.02, was allowed by Mary B. Cravens, administratrix of said estate, on August 24, 1860, and approved January 20, 1861, by William Alexander, Chief Justice of Anderson County; (9) that George F. Alford filed in the County Court of Anderson County on March 9, 1866, his third annual exhibit as administrator pro tem of said estate, called his annual exhibit for the year 1866, up to March 9, 1866, which exhibit reports the collection by him, as administrator pro tem, from November 25, 1865, to March 2, 1866, of $2400.09, and the payment by said administrator pro tem to various persons of $3054.51. The exhibit also contains the statement that: "The suit pending in the District Court on appeal, for full letters of administration, is still undecided;" and (10) that the probate records of Anderson County show that the sixteenth annual report filed by George F. Alford as administrator of the estate of John E. Cravens contains the following recital: "There remains on hand the hereinafter described claims in favor of said estate, all of which are believed to be insolvent." Here follows a list of claims, among which appear the following: "W. G. W. Jowers, $640; W. G. W. Jowers, judgment, $180."

It was also agreed, subject to like objections, that the W. G. W. Jowers who was surety with T. J. Word on the bond of George F. Alford, as administrator pro tem of the estate of Cravens, was the same Jowers who was elected County Judge of Anderson County at the first election in Texas held under the Constitution of 1876, and that he was the same W. G. W. Jowers who was County Judge of Anderson County, and who continuously performed all the duties of Probate Judge of the County Court of said county from the time of said election up to and including the year 1881.

The agreement containing all the above facts was offered in evidence by the appellants, to the admission of which, as offered, both collectively and taking each item thereof separately, the appellees objected, for the following reasons: Because (1) it is immaterial and irrelevant to any issue in the case; (2) the administration of Geore F. Alford upon the estate of John E. Cravens, deceased, cannot, by such evidence, be collaterally attacked; and (3) the Probate Court of Anderson County, as well as the heirs of Cravens, and all parties interested in his estate, have recognized and treated Alford as its administrator.

All these objections were sustained, and the admission of the testimony offered refused. The appellants assign as error the exclusion of the testimony, because (1) "it affirmatively appears from the papers, records and minutes of the Probate Court of Anderson County that the appointment of George F. Alford as administrator of the estate of John

E. Cravens was vacated and annulled by an appeal therefrom, and that thereafter the said Alford was appointed and qualified as administrator pro tem, with limited powers, and that as administrator pro tem he had no power to make any locative contract binding on the estate of his intestate"; and (2) it shows "that the County Judge of Anderson County from February, 1876, to 1881, was a surety upon the bond of George F. Alford as administrator of said estate, and was such surety from December 30, 1862, to the close of said administration, and liable to account for the acts of said administrator, and hence all the orders passed by said Probate Court subsequent to February 1876, were null and void.

In Halbert v. Martin, 30 S. W. Rep., 389, a case where the administration of John E. Cravens' estate was called in question, as it is here, by the appellant Mollie P. Halbert, it is said, by Mr. Justice Finley, that: "The court in which the administration was pending having recognized Alford as the administrator of the estate for a period of about 18 years, and all parties interested in the estate, including appellants, having unequivocally so treated him, it must be conclusively presumed that he was the legal administrator of said estate in all actions where his acts are collaterally attacked;" and in support of this he cites the following authorities: Poor v. Boyce, 12 Texas, 440; Ringe v. Oliphant, 62 Texas, 682; Miller v. Alexander, 8 Texas, 36; Gilford v. Love, 49 Texas, 715; Lyne v. Sanford, 82 Texas, 63, 19 S. W. Rep., 847.

It is unnecessary for us, under these two assignments, to add anything to what we have quoted, for the quotation is directly applicable to the points raised, is fully sustained by the authorities, and conclusively demonstrates the correctness of the court's rulings in excluding the testimony offered.

The compromise agreement of settlement stated in our conclusions of fact between Alford and Mrs. Halbert and husband was introduced in evidence by appellees, over the objection made by appellants that the agreement, in so far as it was offered to affect Mrs. Halbert's rights as an heir to the estate of Earle Cravens, was inadmissible to affect an after-acquired title, she being at the date of the agreement a married woman. After it was admitted appellants requested the court to instruct the jury that the agreement of settlement could not bind or pass or affect Mrs. Halbert's subsequently acquired title. The admission of the testimony, over the objection and refusal of the court to give the special charge, are assigned as errors.

It will be seen from the objection and the charge asked that both assumed that Mrs. Halbert, as an heir of her sister Earle, acquired an interest in the land in controversy. The assumption involves the proposition that Earle at her death owned an interest in the property, for if she owned no such interest, the appellant acquired none as her heir. If a judgment of a court having jurisdiction of the subject-matter, as well as of the persons of the parties, is to be regarded, then the orders of the Probate Court of Anderson County ratifying the locative contract

with Ratcliff, authorizing the administrator to make him a deed to the interest acquired under the contract, recognizing the deed and partition of the land to Ratcliff after they were made by the administrator, and finally partitioning the estate, Earle E. Cravens being represented in the proceedings by a guardian ad litem, with reference to and in recognition of the land allotted to Ratcliff, conclusively show that the appellant Mollie P. Halbert acquired as the heir of her sister no interest in the lands in controversy, for such interest as Earle may have had passed from her by virtue of said administration proceedings into J. T. Ratcliff. Therefore the court did not err in admitting the agreement over the objection, nor in refusing the charge requested.

Appellants asked the court to instruct the jury that the Patton land certificate was community property of John E. and Mary B. Cravens, and upon the death of the latter, in 1862, her half interest in the certificate vested in Mollie P. and Earle Cravens, subject alone to community debts and obligations of John E. Cravens, and that the administration of John E. Cravens' estate could not create a charge or obligation upon the interest inherited by Mary B. Cravens' heirs, and that as Earle owned a one-eighth interest at the time of her death, in 1880, under her mother's will, to find a verdict for Mrs. Halbert for such interest, unless her right to such interest is barred by the statute of limitation, or she acquiesced in or ratified the contract between Alford and Ratcliff. The refusal of the court to give the charge is assigned as error.

The abstract principles of law embodied in the charge are correct, but we do not believe that they have such application to the case appearing from the record before us as entitled the appellants to have them submitted to the jury, for it is apparent that the entire community estate, including the interest of the wife, as well as the husband, was administered upon. Alford was appointed administrator after the death of Mary B. Cravens. All the debts and charges upon the estate, so far as described by the record, were incurred during the existence of the marriage of John E. and Mary B. Cravens, and were charges upon their community estate, for the discharge of which administration was had thereon, and it would have been improper to have excluded from administration the interest in the property of Mary B. Cravens.

The entire community estate being in administration, it was the duty of the administrator, under authority of the court, to have the Patton land certificate located; and having contracted for its location, and the contract having been approved by the court, and the certificate located by virtue of it, and a deed to the locator's interest made by the administrator and sanctioned by the court, which was recognized in the partition of the estate between Mollie P. Halbert and her sister, Earle, in which proceeding the latter was represented by her guardian ad litem, the heirs or devisees of Mary B. Cravens could not be heard to say that the interest of their mother did not pass to Ratcliff by virtue of said

proceedings in probate.   Therefore the court did not err in refusing the charge requested.

The appellants also requested the court to instruct the jury that the order made by W. G. W. Jowers as County Judge of Anderson County, approving the contract made by Alford with Ratcliff for the location of the certificate, and approving the partition agreed upon between them, as well as the deed made by the administrator to Ratcliff, were not binding on the estate of John E. Cravens nor the heirs thereof.   The court refused the charge, and such refusal is assigned as error.   It is believed that the principles quoted from the opinion in the case of Halbert v. Martin, supra, are applicable to and settle the points raised by this assignment adversely to appellant.

No error is indicated by either the thirtieth, thirty-first, thirty-second, or thirty-third assignments of error which could, in view of the record in this case, possibly prejudice the appellants or any of them.

We have thus disposed of the assignments which are only applicable to the appellant Mollie P. Halbert.

As a number of the remaining assignments of error are aimed at the charge, we will for convenience here copy as much of it as may be necessary for their consideration.   It is as follows:

"1.   The court instructs you that the plaintiffs Mollie P. Halbert and her husband in the above entitled causes, which have been consolidated, have shown that said Mollie P. Halbert is the heir of John E. Cravens and Earle E. Cravens, deceased, and the patent introduced in evidence would entitle said Mollie P. Halbert to recover one-half of the land sued for, and you will find for her as to one-half of the land sued for, and so say by your verdict, unless under the evidence and the charges hereinafter given you find against the said Mollie P. Halbert and in favor of the defendants or one or more of them.

"2.   You are further instructed that, if you believe from the evidence that George F. Alford, administrator of the estate of John E. Cravens, made a contract with J. T. Ratcliff to locate the certificate issued to R. S. Patton under which the land in controversy was located and referred to in the patents read in evidence, and to obtain the patents so located by him the said Ratcliff; and shall further believe that he did locate said certificate and obtain a patent to the land sued for, and that said Alford, as said administrator, reported the terms of the contract, if any he had made with Ratcliff, to the County Court of Anderson County, Texas, having jurisdiction of said estate of John E. Cravens, and that said court, sitting as a probate court, confirmed said report and ordered said Alford, as such administrator, to make a deed to Ratcliff for his (Ratcliff's) interest as locator of said certificate; and shall further believe from the evidence that said Alford, as such administrator, did make a deed for said interest in said land to said Ratcliff, which was duly delivered to said Ratcliff; and shall further believe from the evidence that afterwards there was a final settlement of said estate of John E. Cravens in said court,

and the administrator was discharged as such, and that the plaintiff Mollie P. Halbert, and her husband, were present in court, either in person or by attorneys, and that Earle E. Cravens was a minor under the age of 21 years, but was represented by one Gooch as special guardian; and shall further believe from the evidence that after the death of Earle E. Cravens there was a suit in the District Court of Anderson County, Texas, between the plaintiff Mollie P. Halbert and Thomas B. Greenwood and J. Y. Gooch and B. F. Fortson, as husband of said Mollie, as defendants, and S. A. and W. C. Lane and T. F. Threadgill and G. G. Threadgill were plaintiffs, for the purpose of partition and dividing certain lands as a part of the estate of John E. Cravens between the plaintiffs and the defendants, and a decree of said court was made dividing said lands between plaintiffs and defendants, and that said Mollie acquiesced in said contract made with Ratcliff as to locating said certificate, knowing of said contract by said Alford with Ratcliff, and took no legal steps to bring suit or otherwise to annul said contract, if any, with Ratcliff,—then you are instructed that the patent and deeds, etc., read in evidence by each of the defendants who have answered herein are sufficient to vest title in each of said defendants, and so say you by your verdict.

"3. The court further instructs you that the patents and deeds introduced in evidence entitle the plaintiffs T. F. Threadgill and S. A. Lane to the part of the land described in the patents introduced in evidence which belonged to the estate of John G. Gooch, and you will find for said plaintiffs for said interest in said land, and so say you by your verdict, unless you shall find against the said plaintiffs under the evidence and other instructions herein given you. But, in this connection, you are instructed that the deed introduced in evidence by the defendants from said T. F. Threadgill and S. A. Lane, joined by their husbands, to Thomas B. Greenwood and John Young Gooch, conveys to said Greenwood and Gooch one-half of such interest in said land as may have been owned by said plaintiffs at the time of the execution of said deed; and if you find for said plaintiffs, you will only find for them as to one-half of the land described in their deed from Jesse Calhoun.

"4. The court further instructs you that, if you believe from the evidence that said Alford, administrator of John E. Cravens' estate, made a locative contract with J. T. Ratcliff to locate the R. S. Patton certificate, and that under said contract said Ratcliff was to receive one-third of the land, and shall find that said Ratcliff did locate the land according to said contract, and shall find that said Alford, administrator, reported to the Probate Court of Anderson County that he had made such contract, and had agreed with Ratcliff upon a partition of said land, and sought from said Probate Court authority to set aside to said Ratcliff the land in controversy in this suit as his interest in said land, and shall further believe that said authority was granted by said court, and that said Alford did make such partition and deed the land in controversy to said Ratcliff, and that such locative contract was ac-

quiesced in and ratified by Gideon J. Gooch, executor, or Jesse Calhoun, then you will find for the defendants as against said Lane and Threadgill, unless the said plaintiffs are innocent purchasers as hereinafter explained.

"5.   If you find that said locative contract and partition to J. T. Ratcliff were made by George F. Alford, administrator, under orders of the court as hereinbefore specified, and that plaintiffs Lane and Threadgill, with knowledge of same, brought a suit in the District Court of Anderson County, and in said suit partitioned the R. S. Patton land in Hill County, except that portion of same which was deeded to J. T. Ratcliff, and that in said suit and the judgment therein rendered they described said land by plats and field notes referring to the land partitioned to said J. T. Ratcliff, and shall believe from the evidence that said plaintiffs Lane and Threadgill acquiesced in and ratified said locative contract or partition to Ratcliff, then you will find for defendants against said Lane and Threadgill, and so say you by your verdict.

"6.   If you believe from the evidence that the plaintiffs Lane and Threadgill have not acquiesced in or ratified the locative contract with J. T. Ratcliff, if any was made, and should further believe that the said plaintiffs paid a valuable consideration for the land conveyed to them by Jesse Calhoun, without any knowledge of such locative contract, and without the knowledge of such facts as would put a prudent man on inquiry, which would lead to notice of such contract, you will find for said plaintiffs for their interest in the land sued for as hereinbefore explained to you.   But, in this connection, you are instructed that an innocent purchaser is one who, without notice of any adverse claim, advances money on some valuable thing, and one who acquires a title to land in settlement of an existing debt or obligation is not an innocent purchaser in law; and if you find from the evidence that plaintiffs Lane and Threadgill purchased the land conveyed to them by Jesse Calhoun, and paid for it in compromise or settlement of a claim which they previously had against said Jesse Calhoun, then they will not be innocent purchasers."

It is complained that the second paragraph of the charge is erroneous for the reason that, under the law, all the facts which the court required the jury to believe in said paragraph, as well as the patents and deeds of appellees, could not invest defendants with title, nor authorize a verdict in their favor, as against appellants Lane and Threadgill.   It is apparent when this paragraph is read and construed as it should be, with the rest of the charge, that it refers to the case of appellant Mollie Halbert, and it was not intended that, if the jury found as facts the matters stated therein, their verdict on such facts should be against any of the appellants save her.

If in this paragraph no reference has been made to the decree of partition made by the District Court between Mollie P. Halbert, Thos. B. Greenwood, J. G. Gooch, and B. F. Fortson, as husband of said Mol-

lie, or had permitted the jury to find a verdict only against Mrs. Halbert on the matters embodied in the paragraph, the charge would have been free from the criticisms made by appellants' counsel. However, this part of the charge is as favorable to Mrs. Halbert as the law arising from the evidence would authorize. And as a part of the judgment against the other appellants will be reversed on other assignments, it is not necessary for us to express an opinion as to whether or not this part of the charge was calculated to mislead the jury as to the rights of appellants Lane and Threadgill.

The fifth paragraph of the charge is complained of as being upon the weight of the evidence. There is no evidence in the record that tends to show that either Mrs. Lane or Threadgill, when they purchased the land, had any knowledge of the Ratcliff locative contract, nor was there anything of record which would give them constructive notice of such contract, or show that Jesse Calhoun, or his vendor, had ever parted with any of their interest in the lands located by virtue of the Patton certificate. They, as well as the agent who acted for them in making the purchase, swore that they had never heard of such contract, nor of Ratcliff's claim, either when they purchased the land or when the decree of partition was made between them and Halbert, Gooch and Greenwood. For the court, then, to charge the jury that if they knew of said locative contract, and brought suit in the District Court of Anderson County, and in said suit partitioned all the R. S. Patton land in Hill County, except the portion which had been deeded to Ratcliff, and that if in the suit and judgment rendered they described the land by plats and field notes referring to the land partitioned to Ratcliff, was undoubtedly upon the weight of evidence.

The general rule that judgments are not binding upon strangers is so far material that strangers cannot take advantage of the same to affect the parties to them. It is only in cases where some matter of public right or duty is determined, or where strangers have acted upon the faith of recitals in a judgment or decree to their injury, that exceptions are found to this rule. In cases falling under the last exception, strangers can ordinarily assert such a judgment as an estoppel against the parties. Therefore, the references made in the decree of partition to the plats and field notes of the land partitioned to Ratcliff are not of themselves sufficient to authorize the court to direct the jury to find an acquiescence of Lane and Threadgill in the Ratcliff contract and partition. Acquiescence is a question of fact to be determined by the jury from all the facts and circumstances in each case (Medlin v. Wilkins, 60 Texas, 414); and it is not the province of courts to tell the jury what facts or combination of facts will constitute such an acquiescence in the claim of another to one's property as will prevent the owner from recovering it.

In this connection, we will say that if appellants Lane and Threadgill were purchasers for value, without knowledge of the acquiesence, if there was such acquiesence, of Gideon J. Gooch and Jesse Calhoun in the Ratcliff contract, or notice of such contract, or Ratcliff's claim under

it, such ratification or acquiesence of Gooch and Calhoun, or of either of them, would not affect their title to the property.

It is also urged in an assignment that the court erred in the sixth paragraph of its charge, wherein the jury are told that if they find from the evidence that plaintiffs Lane and Threadgill purchased the land conveyed by Jesse Calhoun, and paid for it in compromise or settlement of a claim which they previously had against said Jesse Calhoun, they would not be innocent purchasers. All the evidence as to how these appellants paid for the land is stated among our conclusions of fact, and it is unnecessary to fully reiterate it. If it is true that the consideration was an half interest in 9000 acres of land to which appellants were entitled as heirs of the estate of Joe T. Calhoun, besides an interest in notes and accounts for a large amount coming to them from said estate, and that they relinquished to Jesse Calhoun all their interest in said property, in consideration of his conveyance to them of the property in controversy, it was such a valuable consideration, all the other essential elements concurring, as would constitute them innocent purchasers.

However, on cross-examination, the witness who testified to the consideration seemed to become somewhat confused in his statement as to the real consideration, and upon this confused statement the court doubtless based the charge. But the court should not have based its charge on a single statement of the witness as to the consideration, but should have predicated it upon his entire testimony, and should have informed the jury that if the real consideration was a relinquishment by appellants to Calhoun of their interest in the property above mentioned, such consideration was sufficient to constitute them bona fide purchasers of the land in controversy.

The appellants Lane and Threadgill asked the court to instruct the jury that they would be entitled to recover as innocent purchasers, if they had no notice of and had not acquiesced in the Ratcliff located contract and partition, provided that, in consideration of the conveyance of the Patton land to them, they parted with an interest in other real estate and notes and accounts on other persons than Jesse Calhoun, and canceled and surrendered the security for moneys collected by Calhoun furnished by his bond as administrator. The charge asked would have embraced all the questions arising from the testimony as to the consideration given by appellants Lane and Threadgill for the land, and as in it the principles of law applicable to evidence were correctly enunciated, the charge should have been given.

The appellant asked the court to charge the jury, on the issue of innocent purchasers for value without notice, that the burden of proof was upon the defendants to show notice to the plaintiffs S. A. Lane and J. F. Threadgill of the Ratcliff locative contract, and his claim thereunder. This was also refused and an assignment of error is predicated upon it. It will be observed that Ratcliff's title, if any he had, to the interest of John G. Gooch's estate in the land was purely equitable, of which there was no record notice. The general rule is that to entitle a

subsequent vendee to have a prior unregistered conveyance postponed to his subsequent conveyance, it must appear (1) that he was a purchaser bona fide; (2) that he purchased without notice, actual or constructive, of the title of the prior vendee; and (3) that the payment of the purchase money or consideration was bona fide and truly made. Watkins v. Edwards, 23 Texas, 448; Morton v. Lowell, 56 Texas, 646; Thompson v. Westbrook, Id., 268; Harrison v. Boring, 44 Texas, 263; Illies v. Frerichs, 32 S. W. Rep., 915.

But to the rule that a party claiming to be an innocent bona fide purchaser without notice, must prove such facts, there is an exception, which is: "Where the subsequent purchaser gets the legal title, and another party, holding an equitable title, seeks to oust him, the burden of proof rests on the holder of such equity to show that the subsequent purchaser had notice, actual or constructive, of his equitable title, or such facts as would put a prudent man on inquiry." Peterson v. Mc-Cauley, 25 S. W. Rep., 829; Hill v. Moor, 62 Texas, 610; Lewis v. Cole, 60 Texas, 341.

The facts bring this case within the well established exception to the general rule, and the trial court erred in refusing the special charge.

The refusal of the court to instruct the jury, at the request of appellants Lane and Threadgill, to find for them an undivided one-fourth interest in the land sued for, unless they should find from the evidence that said appellants, or either of them, acquiesced in the partition of the league made between Alford and Ratcliff, and to constitute an acquiescence or ratification, the act or acts relied upon must have been done with full knowledge of all the facts, and with the intention to adopt and be bound by what is claimed to have been acquiesced in or ratified, is assigned by appellants as error. The principle announced in the requested charge is correct (Smith v. Estill, 28 S. W. Rep., 805), and should have been given.

It was not material when or how the locative contract was lost. The fact that it could not be found, after diligent search was sufficiently established to admit secondary evidence of its contents, and the expression by Alford of his opinion as to when and how the original was lost, could in no way have prejudiced appellants. But the recitals in the contract that it had been agreed to by Gideon J. Gooch as executor of John G. Gooch were not evidence of such agreement. Nor were the recitals in the deed from Alford to Ratcliff, nor in the decree of the Probate Court authorizing the deed, evidence against the appellants Lane and Threadgill to establish, either that Alford acted in the interest of the estate of John G. Gooch, under authority of its executor, in contracting with Ratcliff to locate the certificate, that Ratcliff carried out the contract, or that Jim Calhoun acquiesced in and consented to the agreement between Alford and Ratcliff to divide the Patton lands, and promised to join Alford in the deed to Ratcliff. Neither these two appellants nor their vendors were bound by such recitals, and as to them it was purely hearsay, and the court should not have admitted

such recitals, over their objections, as evidence against them, and should have informed the jury, as requested in a special charge, that such recitals could not be considered as evidence against them.

The evidence of Thomas B. Greenwood offered by appellants to show that the field notes and plats used in the case of S. A. Lane and J. F. Threadgill for the partition of the land between them and Mollie P. Fortson and Greenwood and Gooch were furnished by Alford, without knowledge on the part of his firm of the Ratcliff location, should have been admitted, as evidence tending to show that Lane and Threadgill did not, by describing the lands by said plats and field notes, acquiesce in the Ratcliff location, as it seems from the other evidence that they only acted in the proceedings through the firm of lawyers of which Mr. Greenwood was a member.

We have endeavored to consider every question raised by the forty-one assignments of error insisted on by the appellants, and believe we have passed upon every point included in them. While we have not discussed them as fully as we would have liked to, we hope we have done so sufficiently to aid the trial court in properly disposing of them, should they arise upon another trial.

We have found no error in that part of the judgment which is against Mrs. Mollie P. Halbert and her husband, and as to them it is affirmed. The other appellants having parted with half of their interest in the land prior to the institution of these suits, the judgment against them as to such interest is also affirmed.

But, for the errors indicated, the judgment as to the remaining interest claimed, which is an undivided one-fourth of the property in controversy, against appellants Lane and Threadgill, is reversed and the cause remanded.

*Affirmed in part.*
*Reversed and remanded in part.*