### LOZANO et ux. v. MEYERS et al. (No. 1257— 5284.)

Commission of Appeals of Texas, Section A.
June 28, 1929.

E. T. Yates, of Brownsville, for plaintiffs in error.

Myrick & Coursey, of Harlingen, for defendants in error.

HARVEY, P. J. This suit was brought by G. M. Lozano and wife against E. J. Meyers, W. R. Mulhausen, R. W. Mulhausen, and A. G. Purdy, seeking to cancel two promissory notes and a purported mechanic's lien, on account of failure of the consideration for which the notes were executed. The notes were executed by Lozano on May 10, 1927, one for $45,000, and the other for $2,000. Purdy, by cross-action, claimed to be holder of the $2,000 note in due course, and sought recovery thereon. The case was tried before the court without a jury.

Judgment was rendered in favor of the Lozanos, canceling the $45,000 note and the mechanic's lien. Personal judgment was rendered against Lozano in favor of Purdy for the amount due on the $2,000 note. Lozano and wife appealed from this part of the judgment. No complaint is made by any of the parties as to that portion of the judgment which canceled the mechanic's lien and the $45,000 note. The Court of Civil Appeals affirmed the judgment of the trial court. 8 S.W.(2d) 785.

The trial court expressly found the following facts:

"On the 10th day of May, A. D. 1927, the plaintiff G. M. Lozano and wife, and children were living on lots numbers one (1), two (2) and three (3) in Block Number Twenty-three (23) in the City of Harlingen in Cameron County, Texas, the same constituted their homestead, and still constitutes their homestead. At that time G. M. Lozano and wife, as owners, and E. J. Meyers and R. W. Mulhausen and W. R. Mulhausen, as Contractors, entered into an agreement whereby the said contractors were to build a Three (3) story brick and concrete structure on said homestead, for a consideration of forty-seven thousand ($47,000.00) Dollars, provided the said contractors could secure a loan and finance the building. G. M. Lozano and wife signed a builder's contract, and acknowledged it, but none of the Contractors signed it. G. M. Lozano at the same time signed One (1) Mechanic's Lien Note for forty-five thousand ($45,000.00) Dollars, payable to E. J. Meyers and W. R. Mulhausen and One (1) Mechanic's Lien note for two thousand ($2,000.00) Dollars, payable to R. W. Mulhausen. The contractors failed to finance the building, and it was never constructed.

"On the 11th day of May A. D. 1927, R. W. Mulhausen took the Builder's Contract and

Note of Two thousand ($2,000.00) Dollars to L. H. Thompson, and offered it for sale. Said Thompson read the Contract and Note, and purchased the note from said R. W. Mulhausen for his father and paid value for it. The Builder's Contract was not then recorded; it was recorded the next day.

"On the 27th day of June, A. D. 1927, A. G. Purdy purchased the said note from said Thompson and paid value for it."

The "builder's contract," referred to in the above findings of fact as having been signed and acknowledged by Lozano and wife, reads as follows:

"The State of Texas, County of Cameron:

"Know all men by these presents: That we, G. M. Lozano and Mrs. G. M. Lozano, husband and wife, of Cameron County, Texas, parties of the first part, and E. J. Meyers, W. R. Mulhausen and R. W. Mulhausen of Cameron County, Texas, party of the second part have this day entered into the following contract.

"Whereas, the parties of the first part are desirous of building erecting and constructing certain improvements, to-wit: One three story reinforced concrete and brick building to be built, erected and constructed by party of the second part, upon the following described tract, lot or parcel of land belonging to said parties of the first part, to-wit:—

"Lots one, two and three, of Block No. 82 of the townsite of Harlingen, Cameron County, Texas, as more fully shown on map or plat of said townsite of Harlingen of record in the office of the County Clerk of Cameron County, Texas.

"Now therefore in consideration that the party of the second part has agreed and does by these presents agree with the parties of the first part, that they will make, erect, build and finish in a good, substantial and workmanlike manner, by the 10th day of November, 1927, the said above mentioned improvements on the above described premises, performing or causing to be performed all of the labor in the erection and construction of the same, and furnishing all of the material of whatsoever kind necessary to be used in the erection and construction of the same, and paying all expenses incident to the said labor and furnishing of material; the said improvements to be built of good substantial material and to be erected and constructed strictly according to the plans and specifications signed by the parties hereto for identification and made a part hereof, the parties of the first part hereby agree to pay to the party of the second part, at Harlingen, Texas, the sum of Forty Seven Thousand ($47,000.00) Dollars, as follows:

"One certain mechanic's lien note of even date herewith in the principal sum of Forty-five Thousand ($45,000.00) Dollars, executed by G. M. Lozano, payable to the order of E. J. Meyers and W. R. Mulhausen, six months after date, with interest thereon from date at the rate of ten per cent per annum, interest payable at maturity.

"And one certain mechanic's lien note of even date herewith in the principal sum of Two Thousand ($2,000.00) Dollars, executed by G. M. Lozano, payable to the order of R. W. Mulhausen six months after date, with interest thereon from date at the rate of ten per cent per annum, interest payable at maturity; said notes further providing for ten per cent additional on the amount of principal and interest then due, as attorney's fees if placed in the hands of an attorney for collection or if suit is brought on same and providing that failure to pay either of said notes or any installment of interest when due, shall at the option of the holder of said notes, or either of them, mature all of said notes not then already due.

"It is expressly agreed and understood that to secure the payment of said notes according to their face, tenor and effect the party of the second part retains and shall have a valid and existing mechanic's, materialman's laborer's and contractor's lien, equities, securities and interest in and to the above described real estate and the improvements not upon and to be placed upon said land and it is agreed and understood that said notes may be assigned, and the assignee or purchaser shall have and be subrogated to all the rights and equities of the party of the second part, to have and to hold the same, together with all the rights and appurtenances to the same belonging or in anywise incident or appertaining.

"It is also further agreed and stipulated that the parties of the first part shall, at their own cost and expense, keep the property and premises herein described and upon which a lien is hereby created, in good repair and condition, and pay all taxes due and to become due thereon, before the same shall become delinquent, and shall keep the buildings, if any, and improvements that are insurable, insured in a sum of at least $——— in some fire insurance company approved by the party of the second part, or other holder of said notes, to whom the loss, if any, shall be payable, as their interest may appear; and by whom the policy or policies shall be kept, and in case of default made by the parties of the first part in the performance of any of the foregoing stipulations, the same may be performed by the party of the second part, or other holder of said notes, and the parties of the first part agree to repay to the payor thereof, all money thus expended by payor with interest at the rate of ten per cent per annum, from the date when the same was expended, and all sums thus expended shall stand secured by this contract, in like manner with the above notes.

"Said parties of the first part hereby waive in favor of the said indebtedness, all homestead exemptions and allowances, and all allowances in lieu of homestead, or for exempt articles, or for support, and all commissions which may accrue to either of them in any

590

probate proceedings, if any, in which the said premises may be involved.

"Witness our hands at Harlingen, Texas, this 10th day of May, 1927.

"G. M. Lozano,

"Mrs. G. M. Lozano."

Contemporaneously with the signing of the above instrument, which for convenience will be referred to as the "builder's contract," Lozano executed the promissory note in controversy here, same being payable to the order of R. W. Mulhausen, six months after date, and being for the principal sum of $2,000. Said note contains the following recital: "This note is given in part payment for the architectural work for the construction of certain improvements upon (here the lots are described as in the builder's contract); this day contracted to be erected by E. J. Meyers and W. R. Mulhausen for G. M. Lozano and wife. * * *"

The above note and "builder's contract" were delivered to R. W. Mulhausen by Lozano. On May 11, 1927, the former indorsed the note and sold it to Thompson, who had no other notice or knowledge of the terms of the agreement that had been made between the Lozanos and the Mulhausens and Meyers than his reading of the "building contract" and note gave him. At that time the Mulhausens and Meyers had not breached their agreement to construct the building. On June 27, 1927, A. G. Purdy acquired the note from Thompson, for value, and without notice or knowledge that the consideration for the note had failed, and without other notice or knowledge of the terms of the agreement between the Lozanos and the Mulhausens and Meyers than the "building contract" and note, which he read at the time, gave him. The plaintiffs in error contend that these instruments gave notice to both Thompson and Purdy that the contract was indivisible and wholly executory; and, inasmuch as the Mulhausens and Meyers failed to perform their obligations under the contract, the defense of failure of consideration for the note is available to the plaintiffs in error as against Purdy.

The note is a negotiable instrument, and Purdy is holder in due course. Since the latter had no knowledge or notice, at the time he acquired the note, that the consideration therefor had failed, he does not lose the character of holder in due course, even though the "building contract" and note be taken as imparting notice to him that the contract of the Mulhausens and Meyers was indivisible and wholly executory, as contended by the plaintiffs in error. The note is not subject, in his hand, to the defense of failure of consideration. Rev. St. 1925, art. 5933, §§ 25 and 28; 1 Dan. Neg. Inst. § 790; 8 C. J. 748; 3 R. C. L. p. 1067. Besides this, Thompson acquired the note in due course, at a time when no breach of the contract had occurred. Purdy,

in acquiring the note from him, succeeded to his rights.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals affirming same be affirmed.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.